UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW LANE CHRISTIAN,

Petitioner,

v.

KEN ROMANOWSKI,

Respondent.

_____/

Case No. 2:15-cv-12846

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
PATRICIA T. MORRIS

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Matthew Lane Christian ("Petitioner") filed through his attorney Sandra L.

Girard a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on August

13, 2015.[1] Dkt. No. 1. In his application, Petitioner challenges his conviction for

---

[1] The Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of, *see Ward v. Wolfenbarger, 323* F. Supp. 2d 818, 821, n.3 (E.D. Mich. 2004), indicates that Petitioner was discharged from his sentence on September 12, 2016 and is no longer in custody. The language of §§ 2241(c)(3) and 2254(a) require that a habeas petitioner be "in custody" under the conviction or sentence under attack at the time that a habeas petition is filed in the federal court. *See Maleng v. Cook*, 490 U.S. 488, 490–91 (1989). Whether a petitioner is in custody for purposes of the habeas corpus statute is determined at the time that the petition is filed. *Sevier v. Turner*, 742 F. 2d 262, 268 (6th Cir. 1984). Because petitioner was still serving his sentence at the time he filed his petition, he satisfies the "in custody" requirement of §§ 2241(c)(3) and 2254(a), in spite of his subsequent discharge. Once federal jurisdiction has attached to a habeas petition in federal district court, "it is not

1

one count of assault with intent to do great bodily harm less than murder, MICH.

COMP. LAWS § 750.84; and being a second felony habitual offender, MICH. COMP.

LAWS § 769. For the reasons stated below, the petition for writ of habeas corpus is

**DENIED.**

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Eaton County Circuit

Court. This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a stabbing that took place in Delta Township
> on March 9, 2010. Christian and the victim had known each other for
> approximately ten years. The victim accused Christian of stealing
> prescription medication from him approximately six weeks before the
> stabbing. On the night of the incident, Christian was at home with his
> parents. The victim spoke with Christian's mother and advised that
> Christian had been making inappropriate telephone calls to him. The
> victim was intoxicated. Later that evening, the victim arrived at
> Christian's home. Christian's mother asked the victim to leave and
> threatened to call the police. The victim testified that he then
> attempted to leave, but was attacked by Christian. Christian testified
> that the victim did not attempt to leave, but struck him with a hard
> object, causing a laceration over Christian's left eye. Christian stabbed
> the victim several times in the back, causing life-threatening injuries.
> Eaton County Sheriff's deputies arrived at the scene and interviewed
> the witnesses and Christian. The deputies observed a small cut over
> Christian's left eye. The victim was hospitalized for over a month,

defeated by the release of the petitioner prior to completion of proceedings" on his
or her habeas application. *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

was placed on a ventilator, and received multiple surgical procedures. *People v. Christian*, No. 304265, 2012 WL 1698377, at * 1 (Mich. Ct. App. May 15, 2012). Petitioner's conviction was affirmed on appeal. *People v. Christian*, *lv. den.* 493 Mich. 897, 822 N.W.2d 592 (2012).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Christian*, No. 10-020123-FH (Eaton Cty. Cir. Ct. May 29, 2013). The Michigan appellate courts denied Petitioner leave to appeal. *People v. Christian,* No. 319051 (Mich. Ct. App. June 2, 2014); *lv. den.* 497 Mich. 947, 857 N.W.2d 38 (2014).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. The prosecution did not present sufficient evidence to prove beyond a reasonable doubt that Matt Christian did not act in self-defense.

II. Serious errors by trial counsel denied Matt Christian effective assistance of counsel at trial where:

A. Trial counsel failed to call as witnesses Calvin K. "Kody" McDuffie, Lacey Ruiz, and Capri Vaughn, who would have offered testimony in support of Matt's self-defense claim and impeaching Solomon's testimony.

B. Trial counsel should have introduced Matt's medical records from the incident; objected to Detective Maltby's personal opinion of the seriousness of Matt's head injury; and presented an expert to testify that Matt's injury was serious enough to have impaired his judgment.

C. Trial counsel should have presented expert testimony on how

3

Solomon's loss of more than all of his blood affected his memory of events on March 9, 2010.

D. Trial counsel should have objected to the prosecutor's questioning of Allen Christian that suggested that the trail of blood up the steps and into the house came not from Matt's head wound but from the knife with which he stabbed Solomon and he should have had the blood swab from the blood trail on the front step analyzed to show that it was Matt's blood, not Solomon's.

E. Where it was undisputed that Matt was in his home where he had a right to be when Solomon came up the driveway and up the stairs shouting, "Where is he" and "Get him out here," trial counsel should have objected to the Court giving the first paragraph of C.J.I.2d 7.16.

III. Matt Christian was denied effective assistance of counsel at sentencing where counsel did not object to the amount of restitution ordered by the trial court. The trial court found that Solomon was also at fault for his own injuries because he was drunk, he came over looking for a fight, and he violated the criminal trespass laws when he came over after Peggy Christian ordered him not to. Given that finding, the court should have apportioned liability and counsel should have objected when it did not.

IV. Matt Christian was denied effective assistance of counsel at sentencing where counsel failed to object to inaccurate, incomplete, contradictory information and questionable conclusions in the presentence report:

A. The claims in the Presentence Report that Matt was on probation when he stabbed Solomon, that he had four prior adult probations, and that he might qualify for SAI [Special Alternative Incarceration] are wrong.

B. The Presentence Report is incomplete because it does not contain a current psychological or psychiatric report or diagnostic opinions required by M.C.R. 6.425(A) and M.C.L. 771.14(2)(g),

4

and it says the writer spoke to "the witnesses" but she did not speak to Peggy Christian, the only sober witness to the entire chain of events.

C. The Presentence Report makes claims that are contradicted by testimony at trial and the trial court's findings at sentencing, specifically it incorrectly asserts that Solomon went to tell Matt's parents about his drug abuse, that Solomon was not drunk when he went to Matt's house, and that Matt was "blame shifting" when he said it would not have happened if Solomon had not come to his home.

D. The Presentence Report draws questionable conclusions that contradict the evidence at trial, including its claims that Matt was "swinging" a knife and that the evidence did not support Matt's statement that Solomon hit him with a rock.

V. Matt Christian was denied effective assistance of counsel on his appeal of right where his appointed counsel did not raise these issues on appeal and move to remand to make a record to support them.

Dkt. No. 1, pp. 4–6 (Pg. ID 4–6).

## II. STANDARD OF REVIEW

Section 2254(d) of Title 28, United States Code, as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

5

determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing

6

law beyond any possibility for fairminded disagreement." *Id.,* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.  DISCUSSION

**A.  Claim # 1.  The sufficiency of evidence claim.**

Petitioner first argues that there was insufficient evidence to disprove that he acted in self-defense or the defense of others when he stabbed the victim.

Petitioner's claim is non-cognizable on habeas review. Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712; 788 N.W. 2d 399 (2010). The defense of another person is also considered an affirmative defense under Michigan law. *See e.g. People v. Singh,* No. 2013 WL 6124224, * 3 (Mich. Ct. App. November 21, 2013). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.' " *People v. Reese*, 491 Mich. 127, 155, n.76; 815 N.W.2d 85 (2012) (quoting *Dupree,* 486 Mich. at 704, n.11). Although under Michigan law the prosecutor is required to disprove a claim of self-defense or defense of others, *see People v. Watts*, 61 Mich. App. 309, 311, 232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative defenses

has never been constitutionally required . . . ." *See Smith v. United States,* 133 S. Ct. 714, 719 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233–36 (1987); *see also Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir.1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)).

Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F.3d 731, 740 (6th Cir. 1999). Petitioner does not challenge the sufficiency of the evidence in support of the essential state law elements of assault with intent to do great bodily harm; rather, "he has only faulted the jury's refusal to credit his proffered

affirmative excuse or justification" for the stabbing. *Id.* As such, Petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.; Allen v. Redman,* 858 F. 2d at 1200.

Moreover, even if this Court were to determine that Petitioner's claim was cognizable, he would not be entitled to habeas relief. It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But when reviewing the sufficiency of the evidence to support a criminal conviction, the critical inquiry is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318–19 (internal citation and footnote omitted) (emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal

9

court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

The Michigan Court of Appeals rejected Petitioner's claim:

> Christian does not dispute that he was involved in an altercation with the victim, or that he stabbed the victim. Rather he argues that a rational jury could not have found that the prosecution disproved his theories of self-defense and defense of others beyond a reasonable doubt. Contradictory evidence was presented regarding whether the victim attempted to leave the premises after Christian's mother threatened to call the police. While Christian testified that the victim struck him with a hard object, no one reported to law enforcement that the victim had a weapon. Additionally, the victim testified that Christian ran toward him at "full speed" initiating the altercation. There was no evidence that the victim made explicit threats toward Christian or his parents. This Court must not interfere with the jury's role of determining the weight of evidence and the credibility of witnesses. "It is for the trier of fact . . . to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." Therefore, taking the evidence in

the light most favorable to the prosecution, a rational fact-finder could have found that the prosecution disproved that Christian acted in self-defense or in defense of others beyond a reasonable doubt. Thus, there was no reversible error.

*People v. Christian*, 2012 WL 1698377, at * 2 (internal footnotes omitted).

The Court would note that, although the jury could have found from the evidence that Petitioner acted in self-defense or in the defense of others, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the fact-finder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). As sympathetic as a habeas court may be to a petitioner, it must defer to the fact-finder for its assessment of the credibility of witnesses. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, n.1 (6th Cir. 1999) (citing *People v. Heflin*, 434 Mich. 482; 456 N.W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he was in danger; (2) the danger feared was death or serious bodily harm or imminent

11

forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002) (citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)). A defendant is not entitled to use any more force than is necessary to defend himself under Michigan law. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322). "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

In the present case, although there was, to be certain, evidence presented that supported petitioner's claim of self-defense, the prosecution also presented evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that the prosecutor had rebutted petitioner's self-defense claim.

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of

fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos,* 132 S. Ct. at 6 (quoting *Jackson v. Virginia,* 443 U.S. at 326). Although there was evidence to support Petitioner's self-defense claim and Petitioner has given interpretations to the evidence that differ from the state court's interpretation of the evidence, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to the jury's resolution of disputed factual issues," Petitioner is unable to show that the Michigan Court of Appeals unreasonably determined that the prosecutor disproved petitioner's self-defense claim. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

Because the jury essentially chose to reject Petitioner's testimony that he acted in self-defense, which is a credibility determination that this Court must defer to, Petitioner is not entitled to habeas relief on his sufficiency of evidence claim. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 597–98 (E.D. Mich. 2001).

> **B.  Claims # 2 and # 5.  The allegations of ineffective assistance of counsel at trial and the related ineffective assistance of appellate counsel claim.**

In his second claim, Petitioner alleges that his trial counsel provided ineffective assistance at trial. As part of his fifth claim, Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on Petitioner's

13

appeal of right and for failing to move in the Michigan Court of Appeals for a remand to the trial court for a hearing on these claims.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.

Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for

14

counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).

Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting

*Strickland*'s high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

Petitioner first raised his ineffective assistance of trial counsel claims on his appeal of right in a supplemental *pro se* Standard 4 brief that he filed along with the appellate brief filed by his appellate counsel.[2] Petitioner raised these claims for a second time along with his related ineffective assistance of appellate counsel claim in his post-conviction motion for relief from judgment.

Petitioner first contends that trial counsel was ineffective for failing to call Calvin K. "Kody" McDuffie, Lacey Ruiz, and Capri Vaughn, who he claims would have supported petitioner's self-defense claim and impeached Solomon Azzayedi's testimony. Petitioner has not submitted an affidavit from Capri Vaughn, to indicate what this witness's testimony would be,[3] nor did petitioner submit any affidavit

---

[2]  Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry*, 636 F. Supp. 2d 574, 594, n.6 (E.D. Mich. 2008).

[3] Petitioner merely mentions that Vaughn's "testimony about Solomon striking her would have helped to impeach Solomon's credibility as well as his testimony that he did not hit his friends." Dkt. No. 1-1, p. 43 (Pg. ID 53).

16

from Vaughn to the state courts.

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of this portion of his ineffective assistance of claim, Petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether Capri Vaughn would have been able to testify and what the content of this witness' testimony would have been. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call Capri Vaughn to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).

Petitioner attached affidavits from McDuffie and Ruiz. Dkt. No. 15-21, pp. 59–65 (Pg. ID 1557–63). A review of these affidavits shows that neither person was present to witness the altercation between Petitioner and Azzayedi. *See id*. A defendant is not denied the effective assistance of counsel by an attorney's failure to present the testimony of a witness who was not present at the scene of a crime.

17

*See Morgan v. Bunnell*, 24 F.3d 49, 53 (9th Cir. 1994). Because McDuffie and Ruiz were not present when the confrontation took place between Petitioner and the victim, they could not have exonerated petitioner of the crime. Thus counsel was not ineffective in failing to call them as witnesses to support Petitioner's self-defense claim. *See e.g. Pillette v. Berghuis,* 408 F. App'x. 873, 885–86 (6th Cir. 2010). Stated differently, counsel was not ineffective in failing to call McDuffie or Ruiz, because they could have offered only marginal support for Petitioner's self-defense claim. *See Johnson v. Hofbauer,* 159 F. Supp. 2d at 607.

Moreover, Petitioner's counsel presented sufficient evidence in support of Petitioner's self-defense claim at trial. Testimony was presented at trial that Azzayedi and Petitioner had both been diagnosed as bi-polar and were on Xanax. Dkt. No. 15-7 pp. 80–82, 124–25 (Pg. ID 963–65, 1007–08). Both men used illegal drugs and had been in trouble with the law. Dkt. No. 15-7, pp. 117–18 (Pg. ID 1000–01); Dkt. No. 15-8, p. 13 (Pg. ID 1095). Testimony was presented that Azzayedi was known to be a fighter while Petitioner was not. Dkt. No. 15-2, p. 83 (Pg. ID 509). There was testimony that Azzayedi on at least three prior occasions jumped on Petitioner and had punched him the face or otherwise assaulted him. Dkt. No. 15-7, pp. 143–44 (Pg. ID 1026–27); Dkt. No. 15-8, pp. 29–30 (Pg. ID 1111–12). There was testimony that the two men had a falling out in January of

18

2010, where Azzayedi accused Petitioner of stealing Xanax from him. Dkt. No. 15-7, pp. 80–81 (Pg. ID 963–64); Dkt. No. 15-8, pp. 31–32 (Pg. ID 113–14).

Evidence was presented that Azzayedi called Petitioner's mother on the night of the stabbing from a bar and accused Petitioner of leaving a derogatory remark on his cellphone. Dkt. No. 15-7, pp. 139–46 (Pg. ID 1022–29). Petitioner's mother told Azzayedi not to come over to the house because he had been drinking and was belligerent. *Id*. at 140. Azzayedi's sister, Brittany Padgett, testified that Azzayedi asked to be driven to Petitioner's house to talk with Petitioner about the call. Dkt. No. 15-6, pp. 181–82 (Pg. ID 765–66). Padgett testified that she was afraid that Azzayedi would get into a fight. *Id*. Azzayedi's friend Mike Stenzel testified that he thought Azzayedi was going to Petitioner's to tell him to stop prank-calling, not to fight. Dkt. No. 15-6, p. 219 (Pg. ID 803). Peggy Christian, Petitioner's mother, testified that when Azzayedi arrived at the house, she began screaming at him from the front door to leave. Dkt. No. 15-7, pp. 154–56 (Pg. ID 1037–39). According to Peggy, Azzayedi was yelling, "Where is he? Get him out here." *Id*. at 156. Peggy stated that she was frightened and testified that Azzayedi had never talked to her that way before. *Id*. at 154. Peggy testified that Azzayedi continued coming towards the house even after she told him she was calling the police. *Id*. at 154–56; *see also* Dkt. No. 15-7, p. 94 (Pg. ID 977). Peggy Christian's

husband, Allen Christian, could not see what was going on but testified that it sounded like his wife was in a panic. Dkt. No. 15-6, p. 253 (Pg. ID 837).

Petitioner testified that when he heard his mother screaming, he thought "he's [Azzayedi] obviously going to have to go through my mother to get to me." Dkt. No. 15-8, pp. 17–18 (Pg. ID 1099–1100). Petitioner claimed that he grabbed his knife to try to scare Azzayedi and went past his mother to confront Azzayedi. *Id*. at 19. Azzayedi backed down the stairs as Petitioner approached him. *Id*. at 22. The two men ended up in the driveway where the stabbing occurred. Dkt. No. 1-1, p. 14 (Pg. ID 24).

Assuming that counsel was deficient in failing to call McDuffie of Ruiz as witnesses, Petitioner is unable to show that he was prejudiced by this failure, because McDuffie's and Ruiz's testimony would have been cumulative of evidence presented at trial that established the victim had assaulted or hit Petitioner in the past or that he was acting belligerently towards Petitioner on the night in question. *See e.g. Allen v. Howes,* 438 F. App'x. 432, 435 (6th Cir. 2011) (appellate counsel's failure to challenge trial court's exclusion of evidence of murder victim's past violence did not prejudice defendant, as required to establish ineffective assistance; excluded evidence was cumulative of other evidence admitted at trial).

Petitioner next contends that trial counsel was ineffective for failing to introduce Petitioner's medical records to show that he had suffered from a traumatic head injury from the confrontation that would have impaired his judgment regarding whether he was justified in stabbing Azzayedi. Petitioner further claims that counsel should have objected to Detective Maltby's opinion about the seriousness of Petitioner's head injury. Finally, Petitioner argues that trial counsel was ineffective for failing to present expert testimony regarding his impaired judgment resulting from the head injury.

It is unclear from the record whether Petitioner's medical records were actually introduced at trial. Petitioner did testify about receiving four stitches for the injuries that he received during the fight and that he had to go for a CAT Scan because they feared that his Ocular socket may have been broken. Dkt. No. 15-8, pp. 23–25 (Pg. ID 1105–07). The jury was shown a photograph of Petitioner after the altercation, which showed his swollen face. *Id.* at 25. Counsel mentioned Petitioner's injuries and the CAT Scan in his closing argument and suggested that "when you get struck in the head like that it's going to affect you without question, and it did." Dkt. No. 15-8, pp. 61–62 (Pg. ID 1143–44). Counsel mentioned Petitioner's injuries again in his closing argument. *Id.* at 67. Counsel did suggest that Petitioner's head injuries may have clouded his judgment.

Petitioner argues that trial counsel should have called an expert witness to testify that Petitioner's head injury was severe enough that it clouded his judgment. Petitioner presents the affidavit of Dr. Christopher Abood, a neurosurgeon from Michigan State University in support of his claim.

The problem with Dr. Abood's letter is that it would not necessarily have demonstrated that Petitioner was suffering from a traumatic brain injury that would have clouded his judgment regarding the right to use deadly force against Azzayedi. Dr. Abood's letter states that, "[r]esponse to traumatic brain injury and the symptoms listed above can vary." Dkt. No. 15-13, p. 97 (Pg. ID 1346). Dr. Abood did not actually examine Petitioner but only reviewed his records. *Id*. Dr. Abood would thus not have been able to categorically state that Petitioner's judgment was impaired by a traumatic brain injury. Dr. Abood later indicates that this injury to Petitioner could have been "caused by a fist or hard object." *Id*. Had Dr. Abood had testified that Petitioner's injury was caused by a fist, it would have suggested that Petitioner used excessive force and would have diminished his self-defense claim. Thus, counsel was not ineffective for failing to call an expert who would have undermined Petitioner's defense. *See Johnson v. Bagley*, 544 F.3d 592, 605 (6th Cir. 2008) (unreasonable for counsel to present expert who will contradict the sole defense theory and render worthless other helpful testimony); *see also*

22

*Harrington v. Richter*, 562 U.S. 86, 107 (2011) (where "there were any number of hypothetical experts . . . whose insight might possibly have been useful . . . Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.").

Finally, the only evidence of impairment offered by Petitioner is he testified he saw a man in a white hooded sweatshirt and that he pushed him into a car in the driveway, but no one else saw this person. Dkt. No. 15-8, p. 39 (Pg. ID 1121). The question of whether or not this other person was present at the house was not critical to Petitioner's self-defense claim, thus, Petitioner's failure to obtain an expert to testify about his alleged impairment did not prejudice his defense.

Petitioner next contends that trial counsel was ineffective for failing to call an expert to question the victim's memory of the altercation in light of his intoxication and blood loss.

Although trial counsel did not call an expert witness, he did obtain an admission from Azzayedi that a psychiatrist told him that he might be brain damaged from the loss of oxygen. Dkt. No. 15-7, p. 107 (Pg. ID 990). Azzayedi further admitted that he had been placed in a drug-induced coma at the hospital because of his extensive injuries. *Id*. at 107–08. Azzayedi acknowledged that the nickname of the drug used to induce his coma was "milk of amnesia." *Id*. As

23

mentioned above, defense counsel called several witnesses that challenged Azzayedi's version of events. Any expert evidence concerning the victim's memory would have been cumulative of other evidence introduced at trial, thus, counsel was not ineffective in failing to present such evidence.

Petitioner next claims that trial counsel was ineffective for failing to object to the prosecutor's questioning of Allen Christian which suggested the trail of blood up the stairs and into the house came not from Petitioner's head wound but was Azzayedi's blood dripping from the knife. *See* Dkt. No. 15-6, p. 289 (Pg. ID 873).

Petitioner had initially been called as a prosecution witness, although he was later recalled to testify for the defense. During cross-examination, defense counsel asked Petitioner if he knew whose blood was on the rock on the stairs. Dkt. No. 15-6, p. 279 (Pg. ID 863). Although the prosecutor objected to the question, the judge permitted Petitioner to answer the question if he knew whose blood it was. Petitioner replied he did not know whose blood it was. *Id*. Defense counsel then questioned Petitioner extensively about the fact there was blood going up the stairway, into the house, up into the hallway, on the floor of the house, and into the kitchen sink. *Id*. at 279–80.

On re-direct examination, the prosecutor asked the following questions:

24

Q.  Now you would assume that there would be blood on the knife?

A.  Sure.

Q.   And, if there was blood on the knife, that that knife could drip blood?

A. A little bit.

Q.   That knife that could drip blood, if it was brought into your house, could drip blood on your floors as well?

A.  I wouldn't have thought that it would drip into the house as far as it did, all the way to the kitchen.

Q.  I appreciate what you think may or may not have happened, Mr. Christian.

A. Okay.

Q.  But is it possible that if a knife is dripping blood after its been used quite a few times and there is blood on it, it's possible it could drip through your house?

A.  I think it could drip for a short period of time.

*Id*. at 289.

A prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle v. Bagley,* 457 F.3d 501, 518 (6th Cir. 2006). These questions were relevant to rebut Petitioner's claim that he had been injured so badly that he bled throughout the house. Moreover, although Petitioner argues that he lacked personal knowledge, as required by Michigan Rule of Evidence 602 to answer

these questions, Michigan Rule of Evidence 701 does allow witnesses to offer testimony in the form of opinions or inferences. The questions posed by the prosecutor asked Petitioner to simply draw inferences from his own observations. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *See Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). Because the prosecutor's questions were not improper, counsel's failure to object to the prosecutor's questions was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

Petitioner further contends that defense counsel should have had the blood on the stairs and on the rock found on the stairs tested in order to determine whether or not it was Petitioner's blood or the victim's blood.

Petitioner's counsel in his closing argument attacked the police and prosecution for failing to conduct DNA testing or other tests on this evidence and argued that this lack of evidence raised a reasonable doubt. Dkt. No. 15-8, pp. 77–78 (Pg. ID 1159–60). Had Petitioner's counsel requested the testing of this evidence and the blood and it turned out to be Azzayedi's blood, it would have

destroyed counsel's ability to challenge the prosecution's case in the manner that he did in closing argument. Counsel thus had a strategic reason for not requesting such testing. *See Harrington*, 562 U.S. at 108 (finding that defense counsel's failure to consult blood evidence experts was not deficient performance, where such inquiry may have exposed petitioner's version of events as an invention).

Petitioner lastly claims that trial counsel was ineffective for failing to object to the judge giving the first paragraph of CJI 2 7.16, Michigan's jury instruction on self-defense, because the instruction advised the jurors that a person who claims self-defense has a duty to retreat before he or she could exercise his or her right to self-defense. Petitioner argues that he was under no duty to retreat because Petitioner was attacked in his own home. Petitioner acknowledges that the judge advised the jurors that Petitioner was under no duty to retreat if he was attacked in his own home. Dkt. No. 15-8, p. 96 (Pg. ID 1178) ("a person is never required to retreat if attacked in his own home").

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely

27

whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

In the present case, the judge's instruction adequately informed the jurors that Petitioner had no duty to retreat if he was attacked in his home. See Dkt. No. 15-8, p. 96 (Pg. ID 1178). Because the instruction as given adequately informed the jurors that Petitioner had no duty to retreat if attacked in his own home, trial counsel was not ineffective for failing to object to the instruction as given. *See Wilson v. McMacken*, 786 F.2d 216, 218 (6th Cir. 1986)**.**

As part of his fifth claim, Petitioner argues that appellate counsel was ineffective for failing to raise these ineffective assistance of trial counsel claims on Petitioner's appeal of right. The Sixth Amendment guarantees a defendant the right

to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Petitioner's claims lack merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.' " *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of Petitioner's direct appeal.

Moreover, Petitioner was able to raise his ineffective assistance of counsel claims in his Standard 4 *pro per* supplemental brief. Because the Michigan Court of Appeals considered, and rejected the claims raised by Petitioner in his supplemental *pro per* brief, Petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims in the appeal brief filed by counsel. *See Donaldson v. Booker,* 505 F. App'x. 488, 496 (6th Cir. 2012).

### C.  Claims # 3, # 4, and # 5.  Petitioner's remaining claims are moot.

Petitioner in his third and fourth claims alleges that trial counsel was ineffective at sentencing for failing to object to the amount of restitution and to the pre-sentence report. In his fifth claim, Petitioner claims that appellate counsel was

ineffective for failing to raise these claims on Petitioner's appeal of right. Petitioner's claims arising from his sentence have been rendered moot by his discharge from custody.

Article III, Section 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). An incarcerated habeas petitioner's challenge to the validity of his or her conviction satisfies the case-or-controversy requirement because the incarceration constitutes a concrete injury that can be redressed by the invalidation of the conviction. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some "collateral consequence" of the conviction—must exist if the suit is to be maintained in federal court and not considered moot. *Id.*

"In general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim." *Washington v. McQuiggin*, 529 F. App'x 766, 773 (6th

Cir. 2013). A restitution order "falls outside . . . the margins of habeas . . . because it is not a serious restraint on . . . liberty as to warrant habeas relief." *Id*. Where a petition raises a challenge to a restitution order, the district court must dismiss that portion of the petition for lack of subject matter jurisdiction. *Id*.

When a habeas petitioner challenges a conviction pursuant to which he or she is no longer incarcerated, collateral consequences sufficient to the satisfy the case or controversy requirement will generally be presumed. *See Sibron v. New York*, 392 U.S. 40, 55 (1968). However, where a habeas petitioner chooses to attack only his or her sentence, and not the underlying conviction, and that sentence expires during the course of the habeas proceeding, the habeas petitioner's claim for relief is moot. *See Lane v. Williams,* 455 U.S. 624, 630–31 (1982). "Nullification of a conviction may have important benefits for a defendant . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter." *North Carolina v. Rice,* 404 U.S. 244, 248 (1971).

"[M]ootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams,* 807 F. 2d 1286, 1289 (6th Cir. 1986). Because it strikes at the heart of federal court jurisdiction, the mootness of a habeas petition can be raised *sua sponte* by the federal court, even if the issue is not addressed by the parties. *See Brock v. U.S.*

31

*Dep't of Justice,* 256 F. App'x 748, 750 (6th Cir. 2007).

Petitioner completed his sentence and has been discharged from custody. He has not shown that he suffers continuing collateral consequences flowing from the discharged sentence.[4] Absent such a showing, Petitioner's sentencing claims are rendered moot by the completion of the imprisonment term and his discharge from custody. *See Prowell v. Hemingway*, 37 F. App'x. 768, 769–70 (6th Cir. 2002) (federal prisoner's § 2241 petition for writ of habeas corpus which challenged his parole revocation was rendered moot by petitioner's release upon completion of his sentence, absent a showing of actual collateral consequences); *Winegar v. Corrections Dept.,* 435 F. Supp. 285, 293 (W.D. Mich. 1977) (where sentences had already been served, claim of cruel and unusual punishment was moot). Likewise, any claim that counsel was ineffective at sentencing is also mooted by Petitioner's discharge from his sentence. *See Grossnickle v. Burt*, No. 208-CV-11820, 2010 WL 2555239, at * 4 (E.D. Mich. June 2, 2010), *report and recommendation adopted*, No. 08-11820, 2010 WL 2555228 (E.D. Mich. June 22, 2010).

---

[4] The Court notes that claims of detriment in a future parole or sentencing proceeding, impeachment in a future criminal or civil proceeding, use against the petitioner as a defendant in a future criminal proceeding, and possible effects on filing a civil rights lawsuit under 42 U.S.C. § 1983 do not constitute sufficient proof of collateral consequences in the context of a parole revocation context. *See Spencer*, 523 U.S. at 14–16.

## IV. CONCLUSION

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

33

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**


/s/Gershwin A Drain

**HON. GERSHWIN A. DRAIN**

Dated: February 14, 2017        UNITED STATES DISTRICT JUDGE